**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )    CRIMINAL NO. 13-10195-PBS |
| | ) |
| JOHN C. McBRIDE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

**MEMORANDUM AND ORDER**

July 01, 2014

SARIS, Chief Judge.

Defendant John C. McBride has moved to dismiss the indictment on the grounds that it was improperly sealed, and that his arrest violated the Fourth Amendment and Rule 9 of the Federal Rules of Criminal Procedure. After hearing, the defendant's motion is **DENIED**.

**FACTUAL BACKGROUND**

Defendant McBride is a former defense attorney who currently resides in Braintree, MA with his wife and daughter. He is employed in Boston. Since 2008, McBride had been in contact with the Internal Revenue Service ("IRS") regarding past taxes he owed. He filed for bankruptcy in 2009 in the Bankruptcy Court for the District of Massachusetts, and regularly attended the proceedings. In 2012, McBride met with IRS and Federal Bureau of Investigation ("FBI") agents on two occasions and became aware

1

that he was the target of a criminal investigation, but he declined to speak with agents about his conduct.

On June 26, 2013, McBride was indicted on one count of Corruptly Endeavoring to Obstruct or Impede the Due Administration of the Internal Revenue Laws, in violation of 26 U.S.C. § 7212(a), and one count of Bank Fraud, in violation of 18 U.S.C. § 1344. The charges arose in connection with alleged fraudulent releases of federal tax liens and a fraudulent mortgage discharge associated with McBride's residential properties in Marblehead and Edgartown, MA.

The government filed a motion pursuant to Fed. R. Crim. P. 6(e)(4) requesting that the indictment be sealed "until the defendant is in custody . . . and the Court has ordered the indictment unsealed." Dkt. #1. The magistrate judge granted the motion. Dkt. #2. McBride was arrested at his home in Braintree on July 1, 2013, by ten members of the FBI, IRS, and Braintree Police, armed with handguns and wearing bullet proof vests in front of his wife and daughter. He was arraigned the same day. The government moved to unseal the indictment immediately after McBride was in custody. Dkt. #7.

## DISCUSSION

McBride argues that the government violated Rule 6(e)(4) when it moved to seal the indictment without asserting that he posed a risk of flight or providing any other justification.

Further, McBride claims that his arrest constituted an "unreasonable seizure" of his person in violation of the Fourth Amendment and Fed. R. Crim. P. 9 because the warrant was not "properly supported" by a risk of flight. According to McBride, the remedy for these violations is dismissal of the indictment. The government states it requested that the indictment be sealed to secure custody of the defendant.

Rule 6(e)(4) states: "The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial." Fed. R. Crim. P. 6(e)(4). The First Circuit has held that "Rule 6(e) rests on the premise that criminal defendants not yet in custody may elude arrest upon learning of their indictment. . . . [T]he government need not articulate its reasons for requesting that an indictment be sealed, so long as its request is based on a ground set forth in Rule 6(e)." United States v. Balsam, 203 F.3d 72, 81 (1st Cir. 2000). Risk of flight is not the only basis for sealing an indictment. For example, sealing an indictment to protect a key prosecution witness qualifies as a "legitimate prosecutorial objective". Id.

McBride argues that there is no evidence he posed a risk of flight, pointing out that his whereabouts are well known and he has attended proceedings regularly in Bankruptcy Court. He points out that he has no passport, and has extensive family ties here.

The government does not concede that there was no risk of flight, noting: "The government was aware of information about McBride that reasonably raised concerns about a potential risk of flight, including the following: McBride had been disbarred in 2005 after decades of practice; he had filed for bankruptcy in 2009; he had recently lost both of his multi-million dollar homes in Marblehead and Edgartown; he had concealed from his bankruptcy trustee his efforts to fraudulently re-finance his Edgartown property; he had engaged in fraud, fabricated documents, forged signatures, and recorded fraudulent documents at two registries of deeds; and he had recently admitted to sufficient facts on multiple state charges involving identity fraud, credit card fraud and practicing law while disbarred."

The Government essentially relies on evidence that Defendant committed a crime to support the position that he posed a risk of flight. While the weight of the evidence is certainly relevant to risk of flight, it is not necessarily dispositive, particularly here where there are such extensive community and family ties. At the hearing, the government vociferously and alternatively argued that white collar defendants should not be treated differently from defendants charged with street crime. While true, this argument does not defeat the basic principle that an indictment should not be sealed routinely without a legitimate prosecutorial objective.

Even though the evidence does not support a risk of flight in the circumstances of this case, the error is a non-constitutional one. There is no caselaw that suggests that dismissal of an indictment is the appropriate sanction for an unwarranted sealing. The Supreme Court has held that violations of at least some of the Federal Rules of Criminal Procedure, including Rule 6(e), are subject to harmless error review under Rule 52(a). Bank of Nova Scotia v. United States, 487 U.S. 250, 256, 258 (1988) (applying harmless error review where prosecutors violated Fed. R. Crim. P. 6(e) and 6(d) by failing to maintain the secrecy of grand jury proceedings and allowing improper appearances before the grand jury). While neither the Supreme Court nor the First Circuit has addressed harmless error review in the context of an improperly sealed indictment, the First Circuit has routinely applied harmless error review where defendants alleged other defects involving indictments. See, e.g., United States v. Mojica-Baez, 229 F.3d 292, 311 (1st Cir. 2000) (applying harmless error review to prosecutors' "failure to include an element in an indictment that otherwise provided the defendants with fair notice of the charges against them"); United States v. Yefsky, 994 F.2d 885, 892-93 (1st Cir. 1993) (applying harmless error review where an indictment failed to include sufficient facts to notify the defendant of the charges against him, in violation of Fed. R. Crim. P. 7(c)(1)).

Only the Tenth Circuit has squarely addressed whether harmless error review may be applied to an allegation that an indictment was improperly sealed, holding that an improperly sealed indictment should be dismissed if the sealing resulted in non-harmless error which "substantially affect[ed] the defendant's ability to defend against the indictment." United States v. Thompson, 287 F.3d 1244, 1247, 1253-1255 (10th Cir. 2002) (dismissing an indictment based on a harmless error analysis after the government conceded it was sealed for an improper purpose, and the defendant "innocently destroyed relevant documents" during the 11-month period the indictment was under seal).

Some courts in this district have dismissed indictments that were improperly sealed because the statute of limitations on the underlying offenses expired while the indictment was under seal. "[A]n improperly sealed indictment does not toll the statute of limitations." United States v. Upton, 339 F. Supp. 2d 190, 194 (D. Mass. 2004); United States v. Maroun, 699 F. Supp. 5, 6-7 (D. Mass. 1988) (dismissing the indictment because the sealing order was based on an implicit false representation); United States v. Cosolito, 488 F. Supp. 531, 535, 537 (D. Mass. 1980)(dismissing the indictment on the ground that the government's request to seal the indictment because publicly filing the document would compromise an ongoing undercover investigation lacked a factual

basis).

The closest analogue to the McBride's case is <u>United States v. Gigante</u>, 436 F. Supp. 2d 647 (S.D.N.Y. 2006), in which the court found that the defendant, charged with tax evasion, posed no risk of flight since his whereabouts were never unknown, he "was well aware . . . that he was being investigated," had been in "frequent contact" with the government through counsel, had offered to meet with the government several times, and had "asked that he be allowed to surrender if he were indicted." <u>Id.</u> at 657. The magistrate in <u>Gigante</u> granted requests to seal "multiple, successive indictments" over a period of two years, during which the statutes of limitations had expired on the offenses at issue. <u>Id.</u> at 660. Because the court found that the prosecutors could not have been motivated to seal the indictment due to flight risk, the court "conclude[d] that the indictments were sealed only because the Government sought to toll the statute of limitations while pursuing a related investigation," which is not "a legitimate prosecutorial reason" to seal. <u>Id.</u> at 657-58. The indictment in <u>Gigante</u> was ultimately dismissed because the statute of limitations had expired. <u>Id.</u> at 654-55, 660. ("If the Government is unable to justify the sealing of the indictment, the expiration of the limitations period prior to unsealing would result in dismissal of the indictment. . .").

Here the indictment was unsealed immediately after the defendant was arrested. There is no evidence that the sealing substantially affected defendant's rights under the applicable statute of limitations or his ability to defend himself. Accordingly, even though the sealing was improper, it was harmless error.

The government's request for an arrest warrant, rather than a summons, also does not merit dismissal. Rule 9 states, "The court must issue a warrant – or at the government's request, a summons – for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause to believe that an offense has been committed and that the defendant committed it." Fed. R. Crim. P. 9. The defendant's argument seems to be that by requesting an arrest warrant rather than a summons when he posed no risk of flight, the government violated both Rule 9 and the Fourth Amendment's prohibition of "unreasonable seizures" of the person. However, the law requires only that the warrant is supported by probable cause. Here, the indictment itself was sufficient to establish probable cause. See generally Kalina v. Fletcher, 522 U.S. 118, 129 (1997) (holding that the Fourth Amendment's probable cause requirement "may be satisfied by an indictment returned by a grand jury").

## ORDER

The Court **DENIES** Defendant's Motion to Dismiss the Indictment (Docket No. 56).


 /s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge